**UNITED STATES of America ex rel. Arthur RUDICK, Petitioner,**

v.

**Melvin LAIRD, Secretary of Defense, and Stanley Resor, Secretary of the Army, Respondents.**

**No. 533, Docket 33354.**

United States Court of Appeals
Second Circuit.

Argued March 13, 1969.

Decided April 23, 1969.

Leonard B. Boudin, New York City (Rabinowitz, Boudin & Standard, New York City, on the brief), for petitioner.

Alan B. Morrison, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, New York City, on the brief), for respondents.

Before MOORE and FEINBERG, Circuit Judges, and McLEAN,* District Judge.

MOORE, Circuit Judge:

This is an appeal by Arthur Rudick (appellant) from a decision of the District Court for the Southern District of New York, John M. Cannella, *Judge*, which effectively dismissed the instant action for lack of jurisdiction. Rudick, a Private in the Armed Forces of the United States, seeks the aid of the Federal Courts in obtaining his discharge on the ground that he is a conscientious objector. Rather than suing his commanding officer in California where he is stationed, appellant has brought suit against the Secretary of the Army and the Secretary of Defense in New York. The facts, which we have derived from the memoranda of law, affidavits and briefs, are set out below.

Appellant was inducted into the United States Army on March 27, 1968. At no time prior to his induction had he asserted a claim as a conscientious objector. In the course of advanced military training, he alleges that his views on war crystallized and that he became opposed to all wars. Thereafter, on October 12, 1968, he sought conscientious objector status and discharge from the Army.

Pursuant to Army Regulations, appellant was interviewed by a chaplain, a psychiatrist and a hearing officer. Appellant alleges that both the chaplain's report and the hearing officer's report were deficient and that procedures set up by Army Regulations for processing in-service conscientious objectors were not followed. The psychiatrist reported that he considered appellant normal. The chaplain, Major Thomas L. Strayhand, stated in his report that he had counseled appellant "concerning his desire for 1-O classification based upon his religious beliefs." He found that appellant's application for conscientious objector status was not "based solely upon religious training and beliefs. He does believe in self-defense when personally attacked or his family is being attacked."

On October 29, 1968 Rudick was given a hearing by Captain John O'Brien at his base in California. His own attorney was present at this hearing. In his report on appellant's application to the Chief of the Overseas Replacement Station in Oakland, California, after summarizing the interview and indicating some of the background information, Captain O'Brien stated "In my opinion Private Rudick is not sincere and does not have any religious objection to serving in the military. His beliefs are merely convenient to his desire to get out of the Army and not go to Vietnam * * * Therefore, I recommend that

* Of the Southern District of New York, sitting by designation.

Private Rudick's application for discharge as a conscientious objector be denied."

Appellant alleges that he was never formally notified of this recommendation. He also claims that he was notified only informally of the fact that his application for conscientious objector status and for discharge had subsequently been denied.

On February 22, 1969 Rudick departed on leave from his duty station at Fort Ord, California with orders to report to the United States Army Overseas Replacement Center at Oakland, California on March 9, 1969 for assignment to Vietnam. Rudick took his leave in New York City, which is his residence.

While on leave, on March 4, 1969, appellant sought relief in the Southern District of New York under 28 U.S.C. § 2241, claiming that he was entitled to be discharged as a conscientious objector under Department of Defense Directive (DoD) 1300.6 and Army Regulations (AR) 635–20. He claimed that he is being denied due process of law because there was no basis in fact for the Army's failure to discharge him. He alleges that his beliefs are religious and meet the tests set forth in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).

Appellant also contends that the Army failed to follow its own regulations in processing his application. He states that the chaplain is required to submit a report of the interview "to include comments on the sincerity of the applicant in his beliefs and an opinion as to the source of the beliefs," AR 635–20(4) (c), which the chaplain allegedly failed to do. He also claims that the hearing officer was not an officer who was "knowledgeable in policies and procedures relating to conscientious objection matters," DoD 1300.6 VI(b) (4), that the application and supporting papers were not forwarded to Departmental Headquarters for individual determination, DoD 1300.6 VI (b) (5), and that the file was not forwarded to the Selective Service Director

for an advisory opinion, DoD 1300.6 VI (b) (6). Because the Army did not comply with its own regulations, appellant asserts that he was denied due process of law, citing Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968). He also claims that he was denied due process because he was not notified of the recommendations made by the hearing officer.

As indicated above, appellant commenced suit in the Southern District of New York where he was on leave. He claims that, at that time, he was not carried on the books at either Fort Ord or Oakland. On that basis he concludes that he had no immediate commanding officer and that suit against the Secretary of the Army and the Secretary of Defense in the District Court pursuant to 28 U.S.C. §§ 2241 and 1391(e) was proper.

The District Court refused to sign an order to show cause, stating on the back of the proposed order that "Application for order to show cause is denied. The Court does not have jurisdiction. Title 28 U.S.C. § 2241. This is not on the merits. The denial is without prejudice to an application in the proper district." An appeal from this denial was taken, but this Court remanded for a determination whether Judge Cannella's denial was based on his conclusion that there was no jurisdiction to issue the order or the writ. After a brief hearing, Judge Cannella again refused to sign the order to show cause, stating that appellant had failed to show that there was jurisdiction. We treat that refusal as tantamount to dismissing the case for lack of jurisdiction and we affirm that decision.

Section 2241 of Title 28 provides that "Writs of habeas corpus may be granted by * * * the district courts within their respective jurisdictions." This provision authorizes the district courts, on the proper application, to inquire whether a petitioner within their jurisdiction, including a member of the Armed Forces, is being detained in violation of the Constitution or laws of the United States. Hammond v. Lenfest, *supra.*

The appellant, in support of his position that there is jurisdiction, cites Section 1391, which is a venue provision as its title clearly specifies. That provision provides, in subsection (e), that "A civil action in which each defendant is an officer of the United States * * * acting in his official capacity or under color of legal authority * * * may * * * be brought in any judicial district in which * * * the plaintiff resides if no real property is involved in the action."

Because the appellant seems to confuse the principles of jurisdiction with those of venue, at the outset it is necessary to restate the difference between the two. The concepts of personal jurisdiction and venue are closely related but nonetheless distinct. Jurisdiction is the authority to hear and determine a cause; it is, in essence, the power to adjudicate the action. Farmers Elevator Mut. Ins. Co. v. Austad & Sons, Inc., 343 F.2d 7, 11 (8th Cir. 1965). If a court lacks jurisdiction over an action, it lacks the power to act with respect to that action. Venue, on the other hand, does not involve the power or authority to adjudicate a controversy. It relates solely to the place where jurisdiction should or may be exercised. Olberding v. Illinois Central R. Co., 346 U.S. 338, 340, 74 S.Ct. 83, 98 L.Ed. 39 (1953). Venue is a forum limitation imposed for the convenience of the parties. As a concept of convenience rather than of jurisdiction, it may be conferred on a court either by consent or by the failure of the defendant to make a timely objection. Concession Consultants, Inc. v. Mirisch, 355 F.2d 369 (2d Cir. 1966). In either case, whether it is conferred by consent or by waiver, the court may render a valid judgment, whereas lack of jurisdiction cannot be waived, United States v. Griffin, 303 U.S. 226, 229, 58 S.Ct. 601, 82 L.Ed. 764 (1938), Ahrens v. Clark, 335 U.S. 188, 193, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), and a court without jurisdiction is without power to render a valid or binding judgment. Thus venue deals with the question of which court, or courts, of those which possess adequate personal and subject matter jurisdiction, may hear the specific matter in question. In short, jurisdiction must first be found over the subject matter and the persons involved in the cause before the question of venue can be properly reached. Bookout v. Beck, 354 F.2d 823, 825 (9th Cir. 1965).

Therefore, in relation to Section 1391(e), that provision can be said to authorize suit in the Southern District of New York in the instant case if, but only if, jurisdiction—personal and subject matter—otherwise exists. Undoubtedly subject matter jurisdiction exists. 28 U.S.C. § 2241.

As appellant concedes, the general rule in regard to personal jurisdiction under Section 2241 is that the writ may only issue within the district where the petitioner is "in custody." The relevant phrase in Section 2241, "within their respective jurisdictions," limits the power of a district court to hear and determine a prisoner's petition for habeas corpus to those situations where the prisoner both is physically present in the court's territorial jurisdiction and is detained or held in custody within that jurisdiction. Ahrens v. Clark, *supra*. This rule was slightly changed in 1966 by the enactment of 28 U.S.C. § 2241(d) for the limited purpose of permitting the district court for the district where the state sentencing court was held to issue the writ, although the petitioner is held in another district. United States ex rel. Griffin v. LaVallee, 270 F.Supp. 531 (E.D.N.Y.1967).

However, but for this one instance, it is generally required that a petitioner be held in custody within the court's territorial jurisdiction. In Orloff v. Lovett, 101 F.Supp. 750 (D.D.C.), the Court held that a Private in the Army who was voluntarily in the District of Columbia was not restrained within the District and his petition for habeas corpus was dismissed. Similarly, where a prisoner has escaped, he is also no longer in custody within the territorial juris-

diction of the court. See Ragsdale v. Cameron, 117 U.S.App.D.C. 278, 329 F. 2d 233 (1963), where an appeal of the denial of a writ of habeas corpus was dismissed as moot when the petitioner had escaped and had not returned to custody on the date his appeal was to be heard. Furthermore, it is also apparent that a court does not have power to issue a writ unless the person who has custody of a petitioner is within reach of the court's process. See United States ex rel. Keefe v. Dulles, 94 U.S.App.D.C. 381, 222 F.2d 390, cert. denied, 348 U.S. 952, 75 S.Ct. 440, 99 L.Ed. 743 (1955).

▮ One held in custody must also bring his petition for habeas corpus against the proper official. United States ex rel. Lyle v. Carney, 277 F.Supp. 250 (W.D.Pa.1967). Ahrens v. Clark, *supra*, left open the question whether the Attorney General, rather than the petitioner's immediate custodian, is the proper respondent in a habeas corpus action and also whether such an objection can be waived. We do not find it necessary to reach either question in the present case.

The Government maintains that appellant, while on leave, remained under the control of his commanding officer at Fort Ord, California until he was to report to Oakland on March 9, 1969, AR 330–12, and therefore argues that the present suit must be brought in California. Appellant, in turn, claims that when he left Fort Ord with orders to report to Oakland about two weeks later, a vacuum was created so that neither commanding officer had control over him. While the question of which duty station had control of petitioner in the period from February 22 to March 9 is not without difficulty, we note that both stations are in the Northern District of California. Accordingly, if the action had been brought in that district, it would not have been necessary for that court to decide the issue, since both commanding officers would have been within its jurisdiction. The Government also asserts that appellant is certainly not being detained or held in custody in New York because he is presently absent without leave. The appellant responds by making the unusual argument that his status of being in the Army amounts to being detained by the Secretary of the Army and the Secretary of Defense. He concludes that wherever he happens to be while he is in the Army, he is in custody of those officials.

▮ It is readily apparent that neither the Secretary of the Army nor the Secretary of Defense, nor any other official who may be appellant's commanding officer, can be found in the Southern District of New York. Therefore, no person having custody of the appellant is within the territorial jurisdiction of the District Court, nor is such person within reach of the District Court's process. On that basis alone, jurisdiction appears lacking. Furthermore, under appellant's view, a soldier seeking habeas corpus relief would not be required to bring suit against his commanding officer where he is stationed and presumably where his pertinent files are located. Instead, he would be entitled to sue the Secretary of the Army or the Secretary of Defense in any forum of his own choosing anywhere in the United States. Additionally it is doubtful whether a soldier who is absent without leave can be characterized as within the custody of any officer of the Armed Forces, any more than it can be said that an escaped prisoner is in the custody of his jailer. Ragsdale v. Cameron, *supra*.

It is apparent then that there was no jurisdiction in the District Court at the time suit was commenced and that the District Court's refusal to sign an order to show cause on that ground was not erroneous.

The decision below is affirmed.